## Case No. 16,384.
### UNITED STATES v. STEFFENS.
[24 Int. Rev. Rec. 14.]

District Court, N. D. New York. Dec. 14, 1877.

TRADE-MARK—WHAT MAY BE REGISTERED—NATIONAL EMBLEM—COUNTERFEITING TRADE-MARKS—EVIDENCE—COMMITTING MAGISTRATES.

[1. The fact that the eagle is the national emblem of the United States does not prevent its appropriation by private parties for use as a trade-mark, especially when there is but slight resemblance in the figure of the eagle so used to that of the national emblem.]

[2. Trade-marks consisting of the representation (1) of an eagle with head erect and wings extended, perched upon the representation of a branch in leaf, the whole being surrounded

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

with the name of the makers of the article; and (2) of the words and letters "G. H. Mumm & Co., Rheims," accompanied by the same circular design,—held to possess all the requisites of lawful trade-marks, and to have been properly registered under the act of August 14, 1876 (19 Stat. 141).]

[3. The certificate of the commissioner of patents, under seal, stating that certain trade-marks were deposited for registration, that with each mark was deposited a statement (annexed to the certificate), that declarations under oath were filed by a member of the firm filing the trade-mark, and that the statements contained in these declarations were almost word for word in the language of the statutes, is not admissible under Rev. St. § 882, as an authenticated copy, but is made admissible by section 4940, as evidence of all statements of fact therein contained. When so admitted, the certificate must be considered as prima facie evidence of the proper registration of the trade-mark.]

[4. In order to justify a committing magistrate in holding the accused for trial, it is only necessary that the evidence should show probable cause to believe that the prisoner committed the offence charged.]

[Preliminary examination of Emil Steffens on a charge of dealing in counterfeit trade-marks with intent to defraud.]

Rowland Cox, for the United States.
Hall & Blandy, for defendant.

Mr. Commissioner DEUEL'S opinion:
This is an arrest under the 5th section of the act of congress, approved August 14th, 1876, entitled "An act to punish the counterfeiting of trade-mark goods, and the sale or dealing in of counterfeit trade-mark goods." The defendant is charged with having on or about the 15th day of August, 1877, at the Southern district of New York, dealt in and sold certain counterfeits of the trade-mark of G. H. Mumm and Co., with intent to defraud. To support the complaint, the prosecution offered three certificates of the commissioner of patents, under the seal of the patent office, to show that the trade-mark had been registered pursuant to law, and three witnesses were sworn—two to sustain the accusation, and one the agent of complainants, touching their mode of doing business. At the close of the case of the prosecution, the defendant's counsel moved for dismissal on the following grounds: I. That the devices of complainants are not the proper subjects for trade-marks. II. That there is no evidence of proper registration. III. That there is no evidence to warrant holding the defendant.

The first proposition, as stated by counsel in his oral argument, is that, even if the complainants had complied with all the requirements of the statute respecting the registration of the marks in question, their devices were not such as could lawfully become trade-marks, and therefore the protection intended by the statute in question could not in their case be invoked. The trade-marks in question, as shown in the certificates of the commissioner of patents and the fac simile annexed thereto, are substantially as follows: The representation of an eagle, with head

erect and wings extended, having as a perch the representation of a branch in leaf; the whole encircled by the words and letters, "G. H. Mumm and Co.," "G. De Bary." Another consists of the words and letters, "G. H. Mumm and Co., Rheims," accompanied by the circular design above described. If neither of these can lawfully become a trade-mark, the position of the counsel is well taken, and the prisoner must be discharged. The counterfeit in question embracing all of the above devices, if either one of them is sustained the motion falls. The act concerning trade-marks says: "The commissioner of patents shall not receive and record any proposed trade-mark which is not and cannot become a lawful trade-mark, or which is merely the name of a person, firm, or corporation, unaccompanied by a mark sufficient to distinguish it from the same name when used by other persons." Rev. St. U. S. § 4939. It is clearly apparent from this enactment that congress intended that the name of a person, or firm, or corporation, when accompanied by a mark sufficient to distinguish the name from that of any other person, firm, or corporation entitled to use such name, could become a lawful trade-mark. The device which accompanies the name of "G. H. Mumm and Co., Rheims," is clear, distinct, and well defined. It could not mislead any one. It is a distinguishing mark clearly within the provisions of the statute, and as such must be sustained.

The oral argument of the counsel, that the eagle, being the national emblem of the United States, cannot be appropriated by private parties as a mark for trade, is unsupported by the citation of any adjudicated cases that shed any light upon the subject. Counsel makes the statement, and then leaves it. If there is any thing at all in the position, it might have been strengthened by the further statement that it was adopted as one of the emblems, and was borne on the legionary standard of ancient Rome; that in one form or another, single or double headed, it has figured as the national emblem of other governments, such as Russia, Prussia, and Austria. There is, however, but slight resemblance between the national emblem and the eagle constituting a part of the trade-mark in question. It has been decided in the courts of France that national arms can concur with other distinctive signs—for example, the name of the merchant—to constitute an industrial mark. Browne, Trade-Marks, p. 181, § 261, and the case there cited. If national arms can thus be appropriated, it seems to me that there can be no question as to the right of complainants to appropriate a portion of the national emblem. I am clearly of the opinion that the commissioner of patents was right in registering the mark; that it possesses all the requisites of a lawful trade-mark, and, therefore, the first motion must be denied.

The certificates of the commissioner of patents, under seal, presented in evidence, show the 2d day of September, 1876, the trade-marks in question were deposited in the patent office, for registration, by G. H. Mumm and Co., of Rheims, France; that with each mark they deposited a statement, a copy thereof being annexed to each certificate; said certificates further state that "a declaration under the oath of Peter Hermann Mumm, a member of said firm," was also deposited; it is further certified that the statements under oath contained certain declarations which are almost word for word the language of the statutes. It is, however, contended by counsel that these certificates are not sufficient proofs of the proper registration; that they cannot become evidence of the filing of the statement under oath required by the statute. These certificates are clearly not admissible under section 882 of the Revised Statutes, because they are not copies authenticated by the seal of the department. They are not certified copies, but certify that a certain paper had been deposited containing certain declarations.

In the case of Smith v. Reynolds [Case No. 13,097] the judge, commenting on a similar question, used this language: "A certified copy of the trade-mark, of the date of its receipt, and of the statements filed therewith, that is, a copy of everything filed and recorded, and of the memorandum of the date of the receipt thereof is made evidence. But such copy is made evidence only that what is shown by it to have been filed was filed." From this language it would be inferred that such certificate was evidence of all it contained, except, perhaps, conclusions of law. It would be evidence of all questions of fact. The case of Smith v. Reynolds differed from the present case. In that case the certificate did not set forth the filing of the statement under oath, and its contents. In the present case it does. In the absence of this certification, and in the absence of proof of the filing of the required statement under oath, the judge refused to grant an injunction. Congress gave to this certificate the character of evidence in section 4940, Rev. St.; when admitted it is evidence of all statements of fact in it contained. When the facts thus certified show a full compliance with all the requirements of the statutes, it must at least be considered prima facie evidence of the proper registration of complainant's trade-mark. In the absence of all evidence to the contrary it must be deemed conclusive. Since writing the above I have found a case sustaining the position herein taken. Vide Walker v. Reid [Case No. 17,084].

Having disposed of these objections, I now turn to the last question, viz.: Does the evidence warrant holding the accused for trial? A committing magistrate acts in a twofold capacity,—as a court in deciding questions of law and of evidence; as a jury in finding questions of fact. But the scope of investiga-

tion before the magistrate falls far short of a trial of a prisoner before the court and a jury. It is not required before the magistrate as it is before the jury, that all reasonable doubt of the prisoner's guilt must be removed; it is only required that the evidence be sufficient to establish probable cause that the prisoner committed the offence charged. In the present case probable cause of two facts must be created.

I. That the prisoner committed the offence. The evidence of Chapman and Benedict is conclusive on this point.

II. Did he do it with intent to defraud? It is contended by counsel, both in their oral and written argument, that it must be presumed that the labels sold by defendant were for a legitimate purpose, and that in dealing with Chapman and Benedict the presumption is they had authority to act as agents of complainants, and therefore defendant was dealing with complainants, and they could not be defrauded by the transaction. The evidence before me, in substance, is that Chapman, a man unknown to the prisoner, and who assumed the name of Benedict, applied to the accused for labels of complainant's trade-mark; the accused promised to furnish them, and did so on the following day, delivering them after dark in a lager beer saloon on South Washington Square. That when he entered this saloon Mr. Benedict was behind the bar. He asked for Benedict, and when Mr. Benedict said he was the man, he hesitated to transact the business with him, and did not until Mr. Chapman, who had given the order, presented himself. The counterfeit labels were delivered, the price paid, and the prisoner, though solicited. refused to give a receipt. The Monday following, Mr. Chapman swears, he again saw the accused, and in connection with the transaction, he—the accused stated that if it were known what he had done, he would be sent to the state's prison. It was further testified by Mr. De Bary, as general agent of G. H. Mumm and Co., that all the wine of that firm shipped to the United States came to his firm, and that G. H. Mumm and Co. never sold labels to their trade-mark except as attached to packages containing their goods. No evidence on the part of the accused was offered.

From this evidence I can see no escape from the conclusion that the offence was committed with intent to defraud. There can be no other reasonable deduction from the evidence. No fraud was committed because the immediate purchaser, and the complainants who furnished the money, knew what was being bought. The prisoner, however, had no knowledge of the person with whom he was dealing; if he had, evidence of such knowledge would have been proper to destroy the presumption of intent. The immediate consequence of such transaction is a double fraud,—first, destroying the business of a firm which has taken years to

build, by diverting the profits of their trade, and by destroying confidence in their product of manufacture by palming off a spurious article as genuine. And, second, by inducing the public to purchase an article other than that for which they supposed they were paying. It is a fraud on the complainants, and a fraud on the public, and the evidence, to my mind, is sufficient for finding that there was probable cause to believe that such a fraud was intended by the accused. The motions to dismiss are therefore denied, and in the absence of further evidence, the prisoner must be held to await the action of the grand jury.

It seemed to me, when the questions of law herein discussed were raised, that they were ones calling for a decision of the courts empowered to construe and interpret statutes. That they were not properly cognizable by a committing magistrate, whose duty, as I understand it, is to uphold and enforce the statutes as he finds them. Acting on this view, I declined to hear argument on the motion to dismiss the proceedings on the ground of the unconstitutionality of the act in question. The questions, however, being raised and argued, and this being the first arrest under the act of 1876, I felt it my duty to give them as full and as just consideration as I was able. I, however, disclaim any ambition to assume functions or duties not properly within the scope of a committing magistrate. And, as an excuse for giving expression to my views in this unusual form, I state that the questions presented in a proceeding of this nature are entirely new, and that in this form it may be convenient in the event of similar prosecutions before me.